**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| LONE STAR GUN RIGHTS, | § | |
| JUSTIN DELOSH, | § | |
| & JASON DAVIS, | § | |
| *Plaintiffs* | | |
| v. | § | CASE NO. 1:19-cv-521 |
| REPRESENATIVE DENNIS BONNEN, | § | |
| *Defendant* | § | |
| | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Lone Star Gun Rights, Justin Delosh, and Jason Davis file this Complaint pursuant to 42 U.S.C. §1983, 42 U.S.C. §1988, and 28 U.S.C. §2201 against Defendant Dennis Bonnen, seeking a declaratory judgment and preliminary and permanent injunctive relief. Plaintiffs allege as follows in support of their claims.

### Introduction

This case is about the electorate's right to view and participate on the social media pages of their elected officials when those officials create interactive webpages for that purpose. *See Knight First Amend. Inst. At Colum. Univ. v. Trump*, 302 F. Supp. 3d 541, 573 (S.D.N.Y. 2018). Plaintiffs have been blocked from participating in Defendant Texas Legislator Dennis Bonnen's (hereinafter "Representative Bonnen") public forum, specifically his public Facebook Page, because Representative Bonnen disapproves of Plaintiffs' politics.

### Jurisdiction and Venue

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, and §1343.  Venue in this Court is appropriate under 28 U.S.C. §1391(b)(2).

**Plaintiffs**

2.      Plaintiff Lone Star Gun Rights is a pro-gun advocacy organization in the State of Texas.

3.      Plaintiff Justin Delosh is an adult resident of Williamson County, Texas, and is an agent of Lone Star Gun Rights.

4.      Plaintiff Jason Davis is an adult resident of Brazoria County, Texas, and is a constituent of Representative Bonnen.

**Defendant**

5.      Defendant Dennis Bonnen is a Texas House Representative of the 25th District in the Texas Legislature. He is sued in both his official and individual capacity. He acted under color of law. He may be served at his place of business within the Texas Capitol Building located at 1100 Congress Ave., Austin, Texas 78701 in office numbered 2W.13. Alternatively, he may be served at the District 25 Office located at 122 E. Myrtle, Angleton, Texas 77515.

**Statement of Facts**

*Lone Star Gun Rights & Its Agents' Advocacy:*

6.      Plaintiff Lone Star Gun Rights (hereinafter "LSGR") is a pro-gun advocacy organization that has existed since 2014. It is non-partisan, focusing on gun-related legislation. LSGR provides training on how to effectively advocate for particular bills, informs people of legislation that may affect gun rights, and informs people how elected officials view certain gun-related bills. To that end, LSGR circulates surveys to elected officials to gauge their support for bills that affect gun rights.

7.      LSGR advocates for the passage of Constitutional Carry in Texas. "Constitutional Carry" refers to the political position that the Texas Constitution should guarantee civilians – either by legislation, an amendment to the Texas Constitution, or both – the right to possess and carry

firearms, openly or concealed, without a permit or license controlled by the Texas Department of Public Safety.[1]

9.      Plaintiff Justin Delosh (hereinafter "Delosh") is a co-founder and Legislative Director for LSGR. In 2016 and 2018, Delosh circulated surveys to all Republican candidates running for a House seat in the Texas Legislature. A copy of one of the surveys is attached and is hereby incorporated by reference. *Exhibit 1*. Questions on that survey included whether the candidate supports Constitutional Carry, whether he/she would oppose laws that would in any way restrict the right to possess a firearm, among other questions. LSGR published the survey results online in 2016.

10.      LSGR's Facebook Page was viewed by approximately 12 million people per month during the last election cycle in Texas. Over the last several months before the filing of this complaint, approximately 2 million people per month accessed LSGR's Page.

11.      Delosh circulated the surveys in 2018, like *Exhibit 1*, and he reached out to the candidates to confirm receipt. One of the many legislators Delosh contacted was Representative Bonnen, through Facebook.

*Facebook's Essential Nature:*

12.      Facebook is an internet social media platform. Individuals, businesses, and government officials can create Facebook accounts that they, called 'users,' can utilize to electronically

---

[1] Generally, there are no Texas laws that prohibit the possession of concealed or openly carried firearms on private property, with certain exceptions for prohibited person. *See* Tex. Pen. Code Sec. 46.02, *et seq.* To openly carry a handgun in public, however, Texas law requires non-prohibited persons to apply for a License to Carry (hereinafter "LTC"), and the law restricts those who are eligible for an LTC. For example, recent misdemeanants are not eligible for an LTC, and therefore cannot legally openly carry a handgun. Someone with a pending misdemeanor charge of Class B Driving While License Invalid is not eligible for an LTC, nor is someone who has been convicted of that offense in the last five years. *See* Tex. Gov. Code Sec. 411.172, *et seq*; Tex. Trans. Code Sec. 521.457(f).

socialize with other private individuals, advertise and promote their businesses and/or products, or share information with their constituents.

13.    A Facebook profile consists of a photograph of the user, the name of the user, and information about the user that the user chooses to publish. A private user can control the information on his/her/its profile and control who may view that information.

14.    Facebook allows users to see a running log of posts by other users, including news headlines, photographs, videos, personal stories, and updates on what the user 'likes' and their comments on other users' Facebook profiles. By default, a user that can see another user's posts can hit a button that symbolically represents that the user likes or dislikes a post, or symbolically show an emotion related to the post like love or anger. For example, a user may post a photograph of their newborn baby, and their friends can comment under the photograph about how cute the baby is, and/or like or love the photograph to show their approval of the post and/or its content.

15.    A private Facebook user can limit the general public's ability to see the user's photograph, personal information (e.g., location), education and work background, and/or their Facebook posts and comments. The private user can individually select the aspects of their page that the general public may view, limit the ability to view information and posts to those who they have 'friended,' in a variety of permutations.

16.    A user can block other Facebook users from commenting, liking, or disliking their public posts. A user can also hide or delete comments that others have made on the user's posts.

17.    A Facebook profile can be completely private such that no other users can see the user's photograph, information, or posts. It can be completely public so that everything the user has inputted into Facebook is accessible by any other Facebook user. The permutations between the two are almost endless.

18.     Frequently, businesses and elected officials will create entirely public Facebook accounts to advertise their businesses and products or communicate with constituents. Facebook offers Facebook Pages (hereinafter "Pages") that are unique from the aforementioned private profiles. Facebook Pages are for businesses, brands, organizations, and public figures to share their stories and connect with people. Like profiles, Pages can be customized with stories, events, and more. People who 'like' or follow a Page can get updates in the Page's news feed. Unlike profiles, Pages are entirely public whether a Facebook user 'likes' or follows the page, and Page-follows are not approved by moderators or administrators of the Page.

19.     In the first quarter of 2019, **2.38 BILLION** people were active Facebook users.

20.     Facebook, because of its structure and popularity, is highly compatible with and often used for openly expressive activity. Such expressive activity has and continues to include open and critical discussion of government conduct and policy, elected government officials, and other public figures.

*Representative Bonnen's Facebook Page is Public:*

21.     Representative Bonnen has a Facebook page, the identity for which is "Dennis Bonnen, State Representative – District 25." The Dennis Bonnen State Representative Facebook Page can be accessed at https://www.facebook.com/RepDennisBonnen/ by anyone, including those who do not have a Facebook account of their own.

22.     Representative Bonnen has encouraged and permitted the public to (1) comment on, 'like,' and share his posts on legislation, political positions, and community matters and (2) to reply to and 'like' comments posed to the page by members of the public.

23.      He willingly and knowingly created and configured the Facebook page to be open to the public and allow page visitors to interact openly with the page, its content, and fellow page visitors through commenting, likes and shares. He did so in his capacity as a Texas Legislator.

24.      Representative Bonnen was fully aware of Facebook's high compatibility with and use for openly expressive activity when creating and making public the Representative Dennis Bonnen Facebook Page. Likewise, he knowingly and willingly created the Facebook Page to encourage and permit public expression and interaction on matters of public concern (including pending legislation).

25.      Representative Bonnen used this Facebook Page while he was in Austin, Travis County, Texas as a Legislator to post pictures and updates of himself and work at the Texas Capitol in 2019. Upon information and belief, he made decisions and executed decisions about who would be blocked or banned from this Facebook page while he was in Austin, Travis County, Texas, working at the Texas Capitol. Plaintiffs LSGR and Delosh attempted to comment on Rep. Bonnen's Facebook Page while physically in Williamson County, Texas in 2019.

26.      Some of his publicly accessible Facebook Page is attached and is hereby incorporated by reference as *Exhibit 2*. In it, Rep. Bonnen informs 15,329 followers of his activities at the Texas Legislature. Likewise, he updates his thousands of Facebook followers on the status of legislation. The posts in *Exhibit 2* are those which may be viewed by literally anyone online, regardless of whether the person is Facebook-friends with Rep. Bonnen, 'likes' his posts, otherwise follows his Page, or even has a Facebook account of their own – it is completely public.

27.      Rep. Bonnen runs his page as a medium of Texas Legislature-related information for anyone who wishes to follow it. He provides legislative updates, as well as answering and interacting with those who comment on those political posts. *Exhibit 1* includes an example of how

he uses his Facebook Page to update the electorate with legislative news This Page is the only one for Rep. Bonnen on Facebook that is public. It is not a personal account whereby people request and confirm 'friends' and privacy may be set to where only 'friends' may view it. It is a Page similar to that of a business, organization, or celebrity which is public for all Facebook users to follow. Pages such as this may 'sponsor' posts by turning them into advertisements targeted at other users, including those who do not follow the Page.

_Representative Bonnen Blocks & Bans Activists that Disagree with Him:_

28.     Before Delosh communicated to Rep. Bonnen through Facebook about the LSGR survey, Delosh had full access to Rep. Bonnen's public Facebook Page, like any other member of the public. He could see all posts and publicly available comments. Delosh could express approval or disapproval of a post on Rep. Bonnen's Facebook page by liking or disliking it. He could comment on Rep. Bonnen's posts. After Delosh reached out to Rep. Bonnen about his receipt of the LSGR survey, Delosh discovered that he, personally, was block and banned from Rep. Bonnen's page. Delosh could share Rep. Bonnen's posts, but he could not view the comments, post his own comments, or express approval/disproval of any of Rep. Bonnen's posts.

29.     LSGR has a Facebook Page like Rep. Bonnen's, named for the organization. Once Delosh was blocked and banned from Rep. Bonnen's Facebook Page, he could not interact as LSGR in the same way as his private profile. Rep. Bonnen has since blocked and banned LSGR in the same way as Delosh. Any comments that LSGR has posted on Rep. Bonnen's Facebook Page have been hidden by Rep. Bonnen, meaning that LSGR can see its own comments on Rep. Bonnen's Page, but no one else who views Rep. Bonnen's posts can see LSGR's comments.

30.     Other LSGR-related individuals that have administrative controls over the LSGR Facebook Page have been banned from Rep. Bonnen's Facebook page, including the Senior Editor of LSGR, Derek Wills (hereinafter "Wills").

31.     After Rep. Bonnen was elected Speaker of the House, Wills commented on Rep. Bonnen's Facebook Page, calling for the prioritization of the Constitutional Carry Act of 2019 (HB357).

32.     On or about April 2, 2019, after Derek Wills commented about prioritizing the Constitutional Carry Act of 2019 on Rep. Bonnen's Facebook page, he discovered that his access to Rep. Bonnen's page had changed. Before the comment about Constitutional Carry, Wills could symbolically express approval/disapproval (e.g. like, love, laugh, cry, anger), as well as comment and reply to other comments. Likewise, Derek Wills could re-post Rep. Bonnen's posts to his timeline or the timeline of the LSGR Facebook Page. After the April 2nd comment, his access changed such that he could only share Rep. Bonnen's posts. His ability to react and comment/reply was blocked. Because Wills is an administrator for the LSGR Facebook Page, he was also unable to do the same while interacting as LSGR on Facebook.

33.     Wills's April 2nd comment was not defamatory, obscene, inciteful of imminent lawful activity, or even profane, indecent, insulting, harassing, offensive, or threatening. It was merely a comment supporting Constitutional Carry. None of the Plaintiffs to this lawsuit have ever posted anything defamatory, obscene, inciteful of imminent lawful activity, or even profane, indecent, insulting, harassing, or offensive on Rep. Bonnen's Facebook Page.

34.     Following Wills's ban, Rep. Bonnen began posting specifically about LSGR on Rep. Bonnen's Facebook page. Rep. Bonnen posted on April 28, 2019 that "fringe gun activists" were harassing him and leveling death threats against him. As part of that post, Rep. Bonnen included a screen shot of an LSGR Facebook post that voiced support of the organization's philosophical and

political views on the right to bear arms. Rep. Bonnen's April 28, 2019 Facebook post is attached as *Exhibit 3*, and is hereby incorporated by reference. By implication, Rep. Bonnen was accusing LSGR of harassing and threatening him by connecting LSGR with the threat allegation.

35.     No one affiliated with LSGR had harassed or threatened Rep. Bonnen before his April 28, 2019 post, nor have they since. All posts calling for their members to contact Rep. Bonnen (including Facebook posts and emails sent to LSGR members) have contained language reminding the recipient to be respectful when contacting Rep. Bonnen's office.

36.     While LSGR, Delosh, and Wills could see Rep. Bonnen's posts about LSGR, they could not comment to contradict the political message Rep. Bonnen espoused about their organization. In that way, LSGR's relative need to comment on Rep. Bonnen's posts increased, as he posted screenshots of an unrelated post made by the LSGR Facebook Page and chastised the organization. By banning and blocking LSGR and its agents, Rep. Bonnen prevented them from explaining or refuting Rep. Bonnen's claims.

37.     Rep. Bonnen then spread negative misinformation about the contents of the Constitutional Carry bill. LSGR agents were unable to refute his statements directly on his Page so that the people who follow (some of whom vote for) Rep. Bonnen could view their responses. On April 6, 2019, Rep. Bonnen indicated in a post on his Facebook Page that the Constitutional Carry bill would allow convicted criminals to legally carry a handgun. He followed up on these comments on April 9, 2019 on *The Chad Hasty Show* (a talk radio show that airs on KFYO in Lubbock, Texas), by stating that Constitutional Carry is "an issue that would allow a criminal the ability to carry a gun." Rep. Bonnen also stated on the aforementioned April 28, 2019 Facebook post that LSGR is pushing for "legislation that would allow anyone – including criminals – to carry a gun without a license and proper safety training," alluding to the Constitutional Carry bill.  All of these claims

are untrue as the language of the Constitutional Carry bill applies only to a "person not prohibited from possessing" a firearm, and in no way repeals State law regarding prohibited persons.[2]

38.     Representative Bonnen has likewise blocked and banned Plaintiff Jason Davis (hereinafter "Davis") from Rep. Bonnen's Facebook Page. Before being blocked and banned on Facebook, Davis communicated with Rep. Bonnen through both email and Facebook to espouse his concerns about property taxes, equal parenting laws, and child support laws. On or before January 29, 2019, Davis attempted to post on Rep. Bonnen's Facebook Page to ask Rep. Bonnen questions about Rep. Bonnen statements against his political opponent, when Davis discovered that he was blocked or banned from posting. Davis had never, nor has he since, posted anything defamatory, obscene, inciteful of imminent lawful activity, or even profane, indecent, insulting, harassing, offensive, or threatening on Rep. Bonnen's Facebook Page.

39.     Plaintiffs are but a small selection of many who have been blocked or banned by Rep. Bonnen on Facebook for their political beliefs alone, not based on any actual harassment or improper comments. Plaintiffs have attempted to discern how many people's comments have been deleted or might be blocked or banned by Rep. Bonnen on Facebook by looking at the comments on his posts. While a given post on his Page may indicate that there are 35 comments, when the comments are opened to be read, a fraction of those are visible to the reader. This is some indication that other individuals have commented on Rep. Bonnen's posts but have been blocked or banned such that their comments no longer appear to be read by Rep. Bonnen or the electorate. It is

---

[2] Note, Texas law currently allows misdemeanants to possess a firearm in their home and vehicles. No special training is required for a non-prohibited person to possess a firearm in those places. Further, it allows misdemeanants with convictions older than five years old to apply for an LTC to carry handguns openly in public. Rep. Bonnen's use of the term "criminal" might mislead a lay person to believe that the law currently forbids misdemeanants from possessing a handgun at all, anywhere, at any time, which is not the law. *See* Tex. Gov. Code Sec. 411.172, *et seq*; Tex. Pen. Code Sec. 46.02.

unknown how many of those were blocked or banned for political dissent or for actual legitimate reasons.

40.     For example, in *Exhibit 3*, the post appears to have over 1,000 comments. Upon opening those comments, however, one may only see 338 comments. Over 660 comments have either been deleted, hidden, or their posters have been blocked and banned. Comments that praise Rep. Bonnen, or about which he agrees, remain publicly viewable on his Page.

**Causes of Action**

41.     Plaintiff hereby incorporates by reference all facts alleged in the preceding paragraphs, and to the extent any facts are added below, incorporates them into their factual allegations.

*First Amendment Violations:*

42.     Representative Bonnen engaged in viewpoint-based discrimination and censorship of Plaintiffs' speech about matters of public concern in a public forum, violating Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

43.     Rep. Bonnen was aware or should have been aware that his actions were unconstitutional. It is clearly established that a government official cannot censor or restrict speech, or punish a speaker, based on the viewpoint expressed, regardless of the type of forum. *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829-30 (1995); *R.A.V. v. St. Paul*, 505 U.S. 377, 391-92 (1992).

44.     Rep. Bonnen has knowingly and willfully censored and punished Plaintiffs, and others, with a reckless and callous disregard for constitutional rights.

45.     As a direct and proximate cause of Rep. Bonnen's actions, Plaintiffs have been prevented from communicating with Rep. Bonnen and his constituents about matters of public concern,

restricting Plaintiffs' ability to participate in peaceful online assembly and petition for the redress of grievances. *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984).

46.     At the same time, Rep. Bonnen has violated the right of the thousands of people who follow his Facebook Page to receive information that could have been provided by Plaintiffs LSGR and Delosh. *See Kleindienst v. Mandel*, 408 U.S. 753, 762-63 (1972).

47.     Representative Bonnen has violated Plaintiffs' right to expressive association by electronically separating Plaintiffs from the thousands of people who follow his Facebook Page. *See Boy Scouts of America v. Dale*, 530 U.S. 640 (2000).

48.     Representative Bonnen should have known that he may not constitutionally sanction someone for associating with a group about which he does not like or approve, as the law is clearly established that mere membership with an unpopular organization may not be sanctioned. *See Scales v. United States*, 367 U.S. 203 (1961).

49.     Plaintiffs have and will continue to suffer irreparable harm without injunctive relief. Plaintiffs want to participate in the expressive activity on Rep. Bonnen's Facebook page to (a) disseminate information on matters of public concern, (b) peacefully assemble online, (c) petition Rep. Bonnen for the redress of grievances, and (d) receive information on a matter of public concern from the other people that Rep. Bonnen has hidden, deleted, blocked and banned.

50.     Plaintiffs are likely to succeed on the merits of their claims. There is substantial public interest in ensuring that Rep. Bonnen ceases from engaging in viewpoint-based discrimination and censorship in the public forum he created on his Facebook Page.

51.     Plaintiffs seek a declaratory judgment against Rep. Bonnen that what he has done on his Facebook Page violates the rights enumerated in this complaint. A declaratory judgment will

resolve the dispute between the parties and ensure compliance with the First Amendment as part of the democratic process. Plaintiffs seek a declaratory judgment that Rep. Bonnen:

A.    created a public forum with his Facebook Page;

B.    violated Plaintiffs' right to receive information by hiding, deleting, blocking, and banning other people from commenting on his Facebook Page posts;

C.    violated Plaintiffs' right to speak on a matter of public concern by hiding, deleting, blocking, or banning their posts on his Facebook Page;

D.    violated Plaintiffs' right to peacefully assemble online by electronically separating Plaintiffs from the thousands of people who follow Rep. Bonnen on his Page;

E.    violated Plaintiffs' right to seek a redress of grievances by blocking and banning them from his Facebook Page;

F.    violated Plaintiffs' First Amendment rights by engaging in viewpoint-based discrimination by hiding, deleting, blocking, or banning their comments from his Facebook Page.

## Relief

52.    Plaintiffs request Judgment against Rep. Bonnen as follows:

A.    Declaratory relief pursuant to 28 U.S.C. §2201;

B.    Injunctive relief pursuant to 42 U.S.C. §1983;

C.    Reasonable costs, expenses, and attorney's fees pursuant to 42 U.S.C. §1988(b) and expert fees pursuant to 42 U.S.C. §1988(c); and

D.    All other relief to which Plaintiffs are entitled.

Respectfully Submitted,


_/s/ Millie L. Thompson_____
Millie L. Thompson
SBN: 24067974

**THE LAW OFFICE OF MILLIE L. THOMPSON**
1411 West Ave., Ste. 100
Austin, Texas 78701
Telephone: (512) 293-5800
Fax: (512) 682-8721
Email: millie@milliethompsonlaw.com
***ATTORNEY FOR PLAINTIFFS***