UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LONE STAR GUN RIGHTS, JUSTIN DELOSH, & JASON DAVIS,<br>　　　　*Plaintiffs*,<br><br>vs.<br><br>REPRESENTATIVE DENNIS BONNEN,<br>　　　　*Defendant*. | § § § § § § § § § §　Civil Action No. 1:19-cv-00521-LY |

## DEFENDANT DENNIS BONNEN'S MOTION TO DISMISS

NOW COMES Defendant Representative Dennis Bonnen ("Rep. Bonnen"), and files this Motion to Dismiss under Rule 12(b)(6), and respectfully states and alleges as follows.

## INTRODUCTION

1. The Facebook page at issue in this case is Rep. Bonnen's personal campaign Facebook page. It is not administered or controlled by the State of Texas, the Texas House of Representatives, or the Office of the Speaker of the House of Representatives. It is administered and controlled by Rep. Bonnen's campaign for the purposes of campaigning for office. A private entity, such as an individual, a company, or a political candidate cannot be compelled to sponsor and promote the free speech rights of other people, nor is an individual's failure to sponsor or promote the free speech rights of other people an infringement of a constitutional right. While the United States Constitution protects everyone's right to free speech, it protects this right from interference *by the government* and by the government alone. *See* U.S. CONST., Amend. I ("Congress shall make no law . . . abridging the freedom of speech."). Rep. Bonnen cannot be compelled to sponsor all speech—even that of political opponents and persons who wish to post offensive and uncivil comments—on his personal campaign Facebook page. The United States Constitution does not require this. Rep. Bonnen is free to control and use his

Facebook page as a means of his free expression, and Plaintiffs are free to control and use their own Facebook pages as a means of their free expression. Plaintiffs cannot be required to sponsor Rep. Bonnen's views, and Rep. Bonnen cannot be required to sponsor Plaintiffs' views. Plaintiffs' claims in this lawsuit must be dismissed, therefore, because Rep. Bonnen has no obligation to allow any particular person to post or comment on his personal campaign Facebook page. Just like any other individual in the world, Rep. Bonnen is entitled to control who posts on his Facebook page, and whether any particular post remains on his Facebook page. This is part of the essential nature of a personal page on a social media website. Simply because Rep. Bonnen is also the Speaker of the Texas House of Representatives does not mean that he acts in his official governmental capacity with respect to every action he takes and every presence he undertakes on a social media website such as Facebook. Rep. Bonnen's control of his personal campaign Facebook page does not and cannot implicate the First Amendment rights of any other person as a matter of law.

## FACTUAL BACKGROUND

2. The Facebook webpage in question is Rep. Bonnen's personal campaign webpage. It is not a governmental website. It is not a Texas House of Representatives website. It is not a Speaker of the Texas House of Representatives website. Rep. Bonnen's Facebook webpage is a *personal* campaign website for Rep. Bonnen. The Facebook page is not sponsored by the State of Texas, it is not controlled by the State of Texas, it is not administered by the State of Texas, and the content of the page is not regulated by the State of Texas or any other governmental body.

3. Plaintiffs attach to their Complaint multiple pages of snapshots from the "wall" of Rep. Bonnen's Facebook webpage. Tellingly, however, Plaintiffs omit the most pertinent part of this Facebook webpage—the "About" tab, which identifies the exact nature of this Facebook

webpage. One can spot the existence of this "About" tab in Plaintiffs' attached snapshots, but Plaintiffs have carefully omitted from their pleading the actual contents of the "About" tab. This is because the "About" tab's contents confirm that Rep. Bonnen's Facebook webpage is *not* a governmental website.

4. The "About" tab is attached as Exhibit A to this Motion. It is appropriate to take judicial notice of the contents of a public website. *See Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015). Moreover, on a Rule 12(b)(6) motion, the trial court should consider any document incorporated into the plaintiffs' complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008). In this case, Plaintiffs base their pleaded claims on the contents of Rep. Bonnen's Facebook webpage, and thus its undisputed contents may be considered on this Motion. *See* Dkt. 1 ¶¶ 21, 26.

5. First, on the Facebook webpage's "About" tab, the "Page Info" subject line contains a birthdate of "March 3, 1972." *See* Ex. A. This is not the birthdate of Texas, nor of the Texas House of Representatives. It is the personal birthdate of Rep. Bonnen.

6. Second, the "Contact Info" subject line contains contact information of "info@dennisbonnen.com" and "http://www.dennisbonnen.com." *See id.* These are not governmental emails or websites. These are Rep. Bonnen's personal email address and personal website.[1]

7. Third, the "More Info" subject heading provides a "Hometown" of "Angleton, Texas." This is not the birthplace of Texas. This is the hometown of Rep. Bonnen. Under the same subject heading, there is an "About" section, which states as follows:

---

[1] In contrast, Rep. Bonnen's governmental website is https://house.texas.gov/members/member-page/?district=25, the Speaker of the House's website is https://house.texas.gov/members/speaker/, and Rep. Bonnen's governmental email address is dennis.bonnen@house.texas.gov.

> Welcome to *my personal campaign page*! I am a small businessman from Angleton, Texas and currently reside with my wife and children in Lake Jackson. I am honored to serve the State of Texas as Speaker of the House and State Representative for District 25.

*Id.* (emphasis added). Next, there is a "Biography" section, which sets forth additional personal information about Rep. Bonnen, and not historical information about any aspect of Texas government:

> On January 8, 2019, I was unanimously elected by my House colleagues to serve as the Speaker of the Texas House of Representatives. First elected to the Legislature in 1996, I have represented the 25th Legislative District -- which encompasses southern Brazoria County and all of Matagorda County -- for over 20 years.
>
> Prior to my election as Speaker of the House, I served as Speaker Pro Tempore under former Speaker Joe Straus, as Chairman of the House Ways and Means Committee, and as a member of the House Culture, Recreation & Tourism Committee.
>
> At home in Brazoria County, I serve as the honorary chairman of Brazosport College's "Count on Us" campaign. I am on the Board of Directors for Junior Achievement, and I am an honorary member of the Brazoria and Matagorda County Cavalries. I am an active supporter of the Brazoria County Fair, B.I.G. Love Cancer Care Services, Boy Scouts of America, Demi's Difference, and Anchor Dads. I am also a member of the Angleton, Brazosport, Sweeny, West Columbia, Brazoria, Bay City, Matagorda, Palacios, and Sargent Chambers of Commerce.
>
> I am a graduate of Angleton High School and graduated cum laude from St. Edward's University in Austin with a B.A. in Political Science. I am humbled to have been honored by St. Edward's with their Alumni Achievement Award in 2001 and by Angleton ISD with induction into the Distinguished Alumni Hall of Fame in 2013.
>
> In addition to my legislative duties, I am the CEO and Chairman of the Board of Heritage Bank. The Houston Business Journal honored me in 2009 with one of the inaugural "40 Under 40" awards, which recognizes young business leaders who show dynamic leadership in their community.
>
> My family, including my wife Kim and our two boys, make our home in Lake Jackson.

*Id.*[2]  Lastly, there is a "Political views" section, which states "Conservative," and a "Gender" section, which states "Male." *See id.*  Again, this is personal information, not governmental information.

8. Plaintiffs' 42 U.S.C. § 1983 claims—and ancillary claims for declaratory relief under 28 U.S.C. § 2201—are based entirely on Plaintiffs' allegation that they have some constitutional right to post public comments or public expressions of approval or disapproval on *Rep. Bonnen's* personal campaign Facebook webpage.  *See* Dkt. 1 ¶¶ 28-51.  Plaintiffs acknowledge that they remain able to communicate *to* Rep. Bonnen (*i.e.*, via email), *see id.* ¶ 38, that they remain able to view communications *from* Rep. Bonnen on Facebook, *see id.* ¶ 37, and that they remain able to say whatever they want on their *own* Facebook webpage that is equally publicly viewable, *see id.* ¶ 29.  Plaintiffs' complaint is that they want Rep. Bonnen to be forced to provide a platform on his own personal campaign website for *Plaintiffs'* desired messaging.  *See id.* ¶ 51.

9. To better understand the implications of such an alleged constitutional right, in the context of a personal campaign website, it is helpful to consider a sampling of Plaintiffs' comments that resulted in such comments being hidden and/or banned from Rep. Bonnen's campaign page.  Plaintiffs insist in their Complaint that their Facebook activity was not "profane, indecent, insulting, harassing, offensive, or threatening."  *See id.* ¶¶ 33, 38.  Here are two examples of posts that Plaintiffs claim they have a constitutional right to have displayed on, and have sponsored by, Rep. Bonnen's personal campaign page:

---

[2] The repeated use of the first-person pronouns "I," "me," and "my" demonstrates this is a personal webpage.  Were this a website sponsored by the Texas government, one would expect Rep. Bonnen to be referred to in the third person.

- "Dennis Bonnen you deserve cancer"

- "You lying bastered. You're no more for guns then chuck Schumer is. Craw back in your hole and die."

According to Plaintiffs' lawsuit, the Texas electorate has a federal constitutional "right to view" those comments on Rep. Bonnen's personal campaign page.

## ARGUMENT

10. Plaintiffs' Complaint must be dismissed because Plaintiffs' claims fail to pass the threshold test under the First Amendment. The Facebook webpage on which Plaintiffs desire to engage in "free speech" is not sponsored by a state actor.

11. Facebook itself is not a governmental actor, but is a private entity. It follows that Plaintiffs have no general right to engage in speech on Facebook in general.

> "The First Amendment prohibits Congress and other government entities and actors from 'abridging the freedom of speech.'" *Matal v. Tam*, 137 S. Ct. 1744, 1757, 198 L. Ed. 2d 366 (2017) (quoting *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467, 129 S. Ct. 1125, 172 L. Ed. 2d 853 (2009)). Although the Court recognized in *Packingham v. North Carolina*, 137 S. Ct. 1730, 198 L. Ed. 2d 273, that social media sites like FaceBook and Twitter have become the equivalent of a public forum for sharing ideas and commentary, the Court did not declare a cause of action against a private entity such as FaceBook for a violation of the free speech rights protected by the First Amendment. . . . Because the First Amendment governs only governmental restrictions on speech, Nyabwa has not stated a cause of action against FaceBook.

*Nyabwa v. FaceBook*, No. 2:17-CV-24, 2018 U.S. Dist. LEXIS 13981, at *2 (S.D. Tex. Jan. 26, 2018); *see also Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 U.S. Dist. LEXIS 51000, at *26-27 (N.D. Cal. Mar. 26, 2018) (dismissing First Amendment claim against Google based on its alleged restrictions on YouTube videos). Thus, to state a First Amendment claim based on exclusion of speech from Rep. Bonnen's Facebook webpage, Plaintiffs must rely on Rep. Bonnen acting in a governmental capacity, as opposed to a private or individual capacity, in sponsoring such Facebook webpage. Rep. Bonnen has not done so. He has acted in his

individual capacity as a candidate for office sponsoring a campaign page. Nothing on his Facebook page indicates otherwise. Plaintiffs can point to nothing that demonstrates Rep. Bonnen's personal campaign Facebook page is sponsored by or controlled by the government of the State of Texas.

12. To state a claim under § 1983, the plaintiffs must allege that the person who has deprived them of a federal right "acted under color of state law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "This requirement that action be under color of state law is as essential as it is rigorous; a person does not act under color of state law solely by virtue of her relationship to the state, but depending on her function—*i.e.*, the nature of her challenged conduct." *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1411 (5th Cir. 1995). It is not enough, in other words, that Rep. Bonnen is a state Representative or that he is Speaker of the House. The Facebook page at issue must be a governmental page, not personal.

13. A personal campaign webpage constitutes private activity. In *Fehrenbach v. Zeldin*, No. CV-17-5282, 2019 U.S. Dist. LEXIS 20290 (E.D.N.Y. Feb. 6, 2019), *rec. adopted*, 2019 U.S. Dist. LEXIS 48243 (E.D.N.Y. Mar. 21, 2019), the plaintiff pleaded that the deletion of his comments from Congressman Lee Zeldin's campaign Facebook page violated the plaintiff's First Amendment rights. *See id.* at *1-2. The court recognized that a First Amendment claim must be "facially plausible" to survive a motion to dismiss. *See id.* at *11. The court then dismissed the plaintiff's claim regarding the alleged deletion of his comments, based on the following straightforward analysis:

> When he was running for office, Zeldin's campaign organization also maintained a campaign Facebook page. Unlike the official Facebook page, Congressman Zeldin's campaign page is not supported by official government resources.
>
> . . . .

> [T]here is a difference between Congressman Zeldin's two Facebook pages. As discussed in the body of this report, the difference is significant because the alleged modification to the Congressman's campaign page constitutes private action and, thus, lacks the "state action" necessary to support a First Amendment claim.
>
> . . . .
>
> In this case, Fehrenbach cannot prevail on his First Amendment claim. . . . Fehrenbach's January posting was made to Congressman Zeldin's campaign page, and thus, the conduct surrounding the alleged removal of the January 6 post amounts to private action.

*Id.* at *2-3, 6, 12. The same straightforward analysis applies here, and is case-dispositive. Plaintiffs' claims should be dismissed with prejudice.

14. Surely a citizen has no right to speak on the front lawn of an officeholder's private residence or publish statements on the officeholder's garage door simply because that officeholder has been elected to a public office. This would not change if such individual proactively allowed others to enter his property, or to post certain political signs on his personal property. Likewise, a citizen surely has no right to post signs or posters on the exterior or interior of an individual's physical campaign office. This would not change if such individual was the incumbent, or if such individual proactively allowed others to post messages within his personal campaign office. These are consequences of the distinction between an elected official's governmental and individual capacities.

15. Indeed, just as Plaintiffs are generally free to post their preferred messaging on their own Facebook page, any other user is generally free to *decline* to post Plaintiffs' preferred messaging on his Facebook page. No individual is required to allow his private property to be used as a "mobile billboard" for another individual's ideological message. *See Wooley v. Maynard*, 430 U.S. 705, 714-15 (1977). Individuals have no obligation to subsidize a private message with which they disagree. *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557

(2005). Once the Court concludes that Rep. Bonnen's personal campaign Facebook page is not a governmental website, Plaintiffs' claims that they have a right to have their views posted and viewable on that webpage must be dismissed.

16.     In contrast, under Plaintiffs' legal reasoning, Rep. Bonnen's political opponent could post on Rep. Bonnen's website hundreds of comments in support of such opponent, and antagonistic to Rep. Bonnen, and yet Rep. Bonnen would be forced to accommodate those comments on his personal campaign page which exists to promote Rep. Bonnen's candidacy. Additionally, under Plaintiffs' reasoning, Rep. Bonnen could not take down his opponent's political advertisements from Rep. Bonnen's own campaign office. This is not the law. For instance, in *Federer v. Gephardt*, 363 F.3d 754 (8th Cir. 2004), the grant of a motion to dismiss was affirmed against First Amendment claims asserted by the Republican challenger to the incumbent Democrat Congressman, because the incumbent's complained-of actions were taken "as a political candidate and private person." *See id.* at 759-60. "[A] defendant's government employment does not make the defendant a governmental actor for all purposes." *Id.* at 759.

17.     All of the First Amendment cases cited in Plaintiffs' Complaint challenge actions taken by a governmental actor, and *expressly* not in a personal or individual capacity nor in a political-candidate capacity. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) (enforcement of state statute); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995) (act of public university); *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) (enforcement of city ordinance); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) (enforcement of state statute); *Kleindienst v. Mandel*, 408 U.S. 753 (1972) (act of Immigration and Naturalization Service); *Scales v. United States*, 367 U.S. 203 (1961) (enforcement of federal statute); *Knight First Amend. Inst. At Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 552, 567 (S.D.N.Y. 2018)

(operation of Twitter account by the "White House Social Media Director," which webpage was presented "as being a presidential account as opposed to a personal account").[3]

18.  Because Rep. Bonnen's Facebook webpage is a personal campaign page, Rep. Bonnen cannot be said to be a "state actor" in making editorial decisions regarding the contents of that webpage, which is, by definition, a page designed to promote Rep. Bonnen individually as a candidate for office. Consequently, there is no need to proceed to determine whether a Facebook page constitutes a public forum, a designated public forum, a limited public forum, or a private forum. There is also no need to proceed to determine whether "hiding" a comment could constitute an infringement of free speech. There is also no need to proceed to determine whether the alleged hiding or banning of Plaintiffs' comments constitutes viewpoint-based discrimination versus a permissible content-based restriction on inappropriate speech. As a threshold legal matter, Plaintiffs have no right of free speech to post on Rep. Bonnen's "personal campaign" Facebook webpage at all. Rep. Bonnen's content decisions with respect to his personal campaign Facebook page cannot infringe any other person's constitutional free speech rights as a matter of law. Dismissal of Plaintiffs' claims under Rule 12(b)(6) is appropriate.

WHEREFORE, Defendant Representative Dennis Bonnen respectfully prays that the Court grant this Motion to Dismiss, dismiss Plaintiffs Lone Star Gun Rights, Justin Delosh, and Jason Davis's claims with prejudice, and for all other and further legal and/or equitable relief to which Defendant Representative Dennis Bonnen is justly entitled.

---

[3] Moreover, the *Trump* decision is currently being appealed to the Second Circuit.

Respectfully submitted,

By: /s/ G. Alan Waldrop

G. Alan Waldrop
State Bar No. 20685700
Ryan D. V. Greene
State Bar No. 24012730
TERRILL & WALDROP
810 W. 10th Street
Austin, Texas 78701
(512) 474-9100
(512) 474-9888 (fax)
awaldrop@terrillwaldrop.com
rgreene@terrillwaldrop.com

ATTORNEYS FOR
REPRESENTATIVE DENNIS BONNEN

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2019, Defendant Representative Dennis Bonnen's Motion to Dismiss was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorneys of record via the CM/ECF system and/or via electronic mail.

Millie L. Thompson
THE LAW OFFICE OF MILLIE L. THOMPSON
1411 West Ave., Ste. 100
Austin, Texas 78701

/s/ G. Alan Waldrop

G. Alan Waldrop